UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WENDI MONTOYA,<br><br>            Plaintiff,<br><br>    v.<br><br>VOYA INSURANCE AND ANNUITY COMPANY, VENERABLE INSURANCE AND ANNUITY COMPANY, VOYA RETIREMENT INSURANCE AND ANNUITY COMPANY, VOYA FINANCIAL PARTNERS LLC, VOYA FINANCIAL ADVISORS, INC, VOYA INSTITUTIONAL PLAN SERVICES LLC, VOYA INSURANCE SOLUTIONS INC, VOYA RETIREMENT ADVISORS, LLC, VOYA INVESTMENT MANAGEMENT CO LLC, VOYA SERVICES COMPANY, VOYA BENEFITS COMPANY LLC, FIDELITY INVESTMENTS INSTITUTIONAL OPERATIONS COMPANY LLC, FIDELITY DISTRIBUTORS COMPANY LLC, FIDELITY BROKERAGE SERVICES LLC,<br><br>            Defendants. | CASE NO. 2:21-cv-00696-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Defendant Venerable Insurance and Annuity Company ("Venerable"), the sole remaining defendant in this case, moves to dismiss Plaintiff Wendi Montoya's First Amended Complaint ("FAC") (Dkt. 5) pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 30. Venerable contends that Plaintiff's claims are barred by the doctrine of equitable estoppel and alternatively, that Plaintiff

REPORT AND RECOMMENDATION - 1

1  has failed to state viable claims of breach of fiduciary duty, negligence, breach of contract,
2  Washington's Consumer Protection Act, and Washington's State Securities Act. *Id.*
3      Having carefully considered the motion, Plaintiff's response (Dkt. 39), Venerable's reply
4  (Dkt. 43), and balance of the record, the undersigned finds that the matter may be decided
5  without oral argument and recommends that the motion to dismiss be granted on the ground that
6  Plaintiff's claims are barred by judicial estoppel.

PROCEDURAL BACKGROUND

8      Plaintiff brought this lawsuit against Fidelity Distributors Company LLC, Fidelity
9  Brokerage Services, LLC, d/b/a Fidelity Brokerage Services (Washington ) LLC (the "Fidelity
10 Defendants"); Defendants Voya Insurance and Annuity Company, Voya Retirement Insurance
11 and Annuity Company, Voya Financial Partners, LLC, Voya Financial Advisors, Inc., Voya
12 Institutional Plan Services, LLC, Voya Insurance Solutions, Inc., Voya Retirement Advisors,
13 LLC, Voya Investment Management Co., LLC, Voya Services Company, and Voya Benefits
14 Company LLC (the "Voya Defendants"). Plaintiff also sued Venerable Insurance and Annuity
15 Company ("Venerable"), the successor to Voya Insurance and Annuity Company. Plaintiff's
16 account referenced in paragraph 2.24 of the FAC was originally opened with Voya Insurance and
17 Annuity Company, which was sold to VA Capital Company, LLC on June 1, 2018. Following
18 the sale, the Voya Insurance and Annuity Company name was changed to Venerable Insurance
19 and Annuity Company. *See* Dkt. 45, Declaration of Melissa O'Donnell supporting the
20 Stipulation of Plaintiff and Voya Defendants to dismiss the Voya Defendants without prejudice.
21 *See* Dkts. 44, 46.
22     On October 14, 2021, Plaintiff and the Fidelity Defendants filed a Joint Notice of
23 Settlement and Request to Continue Pending Deadlines. Dkt. 25.

REPORT AND RECOMMENDATION - 2

On November 22, 2021, Plaintiff's claims against the Voya Defendants were dismissed without prejudice pursuant to the Stipulation of Plaintiff and the Voya Defendants. Dkts. 44-46.

FACTS ALLEGED IN PLAINTIFF'S FAC

On or about May 1, 2017, Joseph Garcia and Christian Estrada of the Orange County, California firm of Vos Financial, contacted Voya Insurance and Annuity Company claiming to be financial advisors representing Plaintiff. Dkt. 5, ¶¶ 2.19-2.21. They submitted paperwork asking Voya to create an investment account in Plaintiff's name. *Id.* at ¶ 2.21. On January 27, 2017, Voya received an annuity application electronically signed with Plaintiff's name. That application and the annuity contract that issued as a result, are attached as Exhibits 1 and 2 to the Declaration of Emily Harris. Dkt. 31, Exhibits 1 and 2.

Voya set up an individual retirement account ("IRA") in Plaintiff's name in response to the request (the "Voya Account"). *Id.* at ¶¶ 2.22-2.24. The Voya Account was created as a vehicle to invest in a long-term financial product identified as the "Voya Wealth Builder Plus Annuity." The Voya Account was funded with an initial premium of $408,858.21. *Id.* at ¶¶ 2.25-2.28. The Voya Account identified Plaintiff as the owner and her husband, Albert Montoya, as the primary beneficiary. *Id.* ¶ 2.30.

Beginning on November 16, 2017, Voya received three written requests from VOS Financial seeking to withdraw funds from the Voya Account:

    1)    On November 16, 2017, in response to a withdrawal request of $20,000.00 payable to VOS Financial, Voya sent a check payable to VOS Financial in the amount of $19,980.00, which resulted in surrender charges and fees to the Voya Account of $1,845.98;

    2)    On January 22, 2018, in response to a withdrawal request of $30,000.00 payable to VOS Financial, Voya sent a check payable to VOS Financial in the amount of $30,000.00, which resulted in surrender charges and

REPORT AND RECOMMENDATION - 3

        fees to the Voya Account of $2,768.98; and

        3)    On April 10, 2018, in response to a withdrawal request for a $60,000.00 payable to VOS Financial, Voya sent a check payable to VOS Financial in the amount $60,000.00, which resulted in surrender charges and fees to the Voya Account of $5,537.96.

*Id.* at ¶¶ 2.35-2.51. All the withdrawal requests appear to bear Plaintiff's signature. Dkt. 5, ¶¶ 2.34–2.53, 2.74. Plaintiff alleges that the Voya Account was thus reduced by $120,152.92 in less than a year and by May 1, 2018, the value of the Voya Account was at $303,293.05. Dkt. 5, ¶¶ 2.53-2.54. Plaintiff does not allege that her money was used to fund the Voya Account, but that Garcia and Estrada wrongfully used Plaintiff's signature to set-up and fund a new account. Plaintiff alleges that the funds in the Voya Account may have been procured through fraud, forgery and/or were associated with money laundering. *Id.* ¶ 2.26-2.88.

Plaintiff alleges that it was not until June 20, 2018, when she received a letter from the State of California Department of Insurance ("CID"), that she learned that Garcia and Estrada had purchased an annuity in her name and had made several withdrawals using forms appearing to bear her signature. *Id.*, ¶¶ 2.55-2.60, 2.74. She immediately informed Venerable of the alleged wrongdoing, and Venerable honored her request to ensure that Garcia and Estrada made no further unauthorized withdrawals. *Id.* ¶¶ 2.66–2.69.

Plaintiff alleges that she did not "approve or authorize any of the transaction or withdrawals relating to the Voya Account, including the creation of The Voya Account as well as the withdrawals…" and "that the signatures provided to Voya (including the signature on the November 2017 withdrawal form) were not her signature." Dkt. 5, ¶¶ 2.73, 2.74, 2.75.

Plaintiff alleges that she suffered damages of at least $101,172.92 based on Voya's (now Venerable) failure to verify that Estrada and Garcia were licensed financial advisors who were properly authorized to act on Plaintiff's behalf. Dkt. 5, ¶¶ 2.85-2.91.

REPORT AND RECOMMENDATION - 4

On September 30, 2019, Plaintiff filed a bankruptcy petition in the U.S. Bankruptcy Court for the Western District of Washington, *In re Montoya*, No. 19-13594, Dkt. 1 at 14 (Bankr. W.D. Wash. 2019). *See* Dkt. 31, Harris Decl., Exhibit 3. Plaintiff listed a "Voya Financial (just sold to Venerable IRA) in the amount of $301,558.00 and a Fidelity IRA in the amount of $1,237.00 as exempt property. Dkt. 31-3 at 18. Under the heading of "Certain Losses," Plaintiff described a $179,000.00 loss from her 401K as follows:

> Money from our 401K was stolen by an Accountant that we had hired to do our taxes. In 2017 my 401k with Fidelity was taken by him with a simple phone call $89,191.21. Then he took $20k in November 2017 from Voya which was an account he set up with my name and ID but all of his contact information and bank data. In April of 2018 he stole another 60k from Voya. Lots of penalties Before learning that I had a huge problem, I withdrew 30K early 2018.

Dkt. 31-3 at 44.

On October 31, 2019, Plaintiff filed an amended Form 106A/B. Dkt. 31, Ex. 4. Under the category, "Retirement or pension accounts," Plaintiff listed the following assets: (1) VOYA Financial ("just sold to Venerable") IRA valued at $301,558.00; (2) Fidelity IRA valued at $1,237.00; (3) Fidelity 401K valued at $90,000.00; and (4) Voya IRA valued at $90,000.00.

As to the $90,000.00 Fidelity 401K, Plaintiff stated:

> [T]his is one of the two retirement accounts from which approximately $90,0000 [sic] was stolen out of by a Financial Advisor that is currently in jail for embezzling money from many people; Debtor pursuing reimbursement by Fidelity.

As to the $90,000.00 Voya IRA, Plaintiff stated:

> [T]his was the second of two retirement accounts that a financial advisor stole approx. $90,000 in funds from and who now is in jail; Debtor pursuing reimbursement by Voya.

Dkt. 31, Exhibit 4 at 5.

REPORT AND RECOMMENDATION - 5

Under the category "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment," Plaintiff checked the "No" box. *Id.* at 7. The Bankruptcy Court entered an Order of Discharge on January 2, 2020. *Id.*, Exhibit 5.

Plaintiff filed her original complaint in this action on May 27, 2021 (Dkt. 1) and the FAC on June 14, 2021 (Dkt. 5). Plaintiff claims against Venerable include breach of fiduciary duty, breach of contract, negligence, and violations of Washington's Consumer Protection Act and Securities Act.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations or legal conclusions are not entitled to the assumption of truth. A court considering a motion to dismiss can disregard these conclusory allegations and judge the complaint only on well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678–79; *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993). A primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant discovery because, based on the factual scenario on which the case rests, the plaintiff could never win. *Iqbal*, 556 U.S. at 678–79

## OBJECTIONS TO EXHIBITS

Plaintiff argues that Venerable has improperly relied on affidavits and exhibits beyond the pleadings on record in this case thereby improperly converting the motion to dismiss into a motion for summary judgment. Dkt. 39, pp. 5-6. The Court disagrees.

Although parties generally cannot rely on matters outside the pleadings when arguing for or against dismissal, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2002), but federal

courts reviewing Rule 12(b)(6) motions may consider any writing that "forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). If the writing in question is not already appended to the complaint itself, "[t]he defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908; *see also Lee*, 250 F.3d at 688–89.

It is also well settled that this Court may "take judicial notice of court filings and other matters of public record" when considering a motion to dismiss. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 750 n.6 (9th Cir. 2006) (citing *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)). And to the extent of any contradiction between the allegations of the complaint and the exhibits, the exhibits control. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) ("Although we normally treat all of plaintiff's factual allegations in a complaint as true, 'we need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001))).

The documents attached to Venerable's motion to dismiss either form the basis of Plaintiff's claims or are court filings and matters of public record. Exhibits 1 and 2, taken together, form the annuity contract Plaintiff claims Venerable breached. Exhibit 1 is the annuity contract and Exhibit 2 is Plaintiff's application, which is expressly incorporated into the final contract. Dkt. 31, Exhibit 1, Section 9.1. Plaintiff does not dispute the authenticity of these documents and in fact, expressly relies on them in her response. *See* Dkt. 39, at 17.2. These documents "form[] the basis of the plaintiff's claim" and further, because Plaintiff claims that

Venerable breached the contract, Venerable "may offer such . . . document[s]," and "the district court . . . may assume that [their] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

Exhibits 3, 4, and 5 are "court filings"—specifically, filings from the Bankruptcy Court for the Western District of Washington—of which the Court may "take judicial notice." *Reyn's Pasta Bella*, 442 F.3d at 750 n.6.

Conversely, Plaintiff has submitted evidence outside of the FAC complaint in her response. The Court will not consider this evidence in determining Venerable's motion to dismiss. First, Plaintiff attached the Declaration of Aubrie D. Hicks. Dkt. 39-1. The allegations in this declaration consist solely of hearsay statements made by the trustee in Plaintiff's 2019 bankruptcy proceeding during a phone call with Plaintiff's counsel. Attached to the declaration is an email in which the trustee states his belief that Plaintiff's claims against Venerable were disclosed in, and are exempt from, the bankruptcy proceeding. Neither the declaration nor the attachment is a "court filing[]" or "other matter[] of public record," *Reyn's Pasta Bella*, 442 F.3d at 750 n.6, nor are they documents that the Amended Complaint "incorporate[s] by reference," *Ritchie*, 342 F.3d at 908.

The second attachment is Plaintiff's declaration, which is not properly considered by the court on a motion to dismiss pursuant to Rule 12(b)(6), and its contents will be disregarded for those purposes.

## DISCUSSION

Judicial estoppel is an equitable doctrine designed to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–750 (2001). Its purpose is "to

prevent litigants from playing 'fast and loose' with the courts and to protect the integrity of the judicial system." *Ah Quin v. Cnty. of Kauai DOT*, 733 F.2d 267, 271 (9th Cir. 2013) (*quoting New Hampshire*, 532 U.S. at 749–750). In general, courts consider three factors when determining whether the doctrine applies: (1) whether the party's later position is "clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept [its] earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750.

"In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin*, 733 F.3d at 271. In short, when a plaintiff sues for claims that she failed to list in an earlier bankruptcy schedule, all three elements of judicial estoppel are satisfied. *Green v. New Penn Fin., LLC*, 2019 WL 1957961, at *4 (C.D. Cal. Mar. 1, 2019), *aff'd*, 831 F. App'x 303 (9th Cir. 2020); *Hay v. First Interstate Bank, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992) (estopping plaintiff from asserting claim omitted from the bankruptcy petition). In bankruptcy proceedings, a debtor must disclose all contingent, unliquidated, and potential claims, including those which are acquired after the commencement of the case but before the case is closed, dismissed, or converted. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001). "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Id*. "The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for

REPORT AND RECOMMENDATION - 9

the duration of the bankruptcy proceeding." *Id*.

Based on the allegations stated in the FAC, all of Plaintiff's claims against Venerable accrued prior to the filing of her bankruptcy petition and schedules of assets. Plaintiff alleges that on June 20, 2018, she learned that an annuity had been purchased in her name and that fraudulent withdrawals from the annuity had occurred. FAC ¶¶ 2.55–2.60. However, when she filed for bankruptcy over a year later, in September of 2019, she did not reference any claim against Venerable or any other party in her bankruptcy petition. *In re Montoya*, No. 19-13594, Dkt. 1 at 14 (Bankr. W.D. Wash. 2019), Dkt. 31, Harris Decl., Ex. 3. Plaintiff listed the Fidelity and Venerable IRA accounts as assets under the heading of "retirement or pension accounts", but she affirmatively represented to the bankruptcy court and to her creditors that she had no "[c]laims against third parties" and no "[o]ther contingent and unliquidated claims" of any kind. *Id*.

In the October 31, 2019 amended asset schedule, Plaintiff added a note under the heading of "retirement or pension accounts" that she was pursuing reimbursement of $90,000 from Fidelity and $90,000 from Venerable. *See* Dkt. 31-4 at p. 5. In her FAC however, Plaintiff alleges that there were over $120,000 in withdrawals made from a fraudulently created and funded Venerable IRA valued at $408,858.21. FAC ¶ 2.53; No. 19-13594, Dkt. 11; Dkt. 31, Harris Decl., Ex. 4. Additionally, she again affirmatively represented to the bankruptcy court and to her creditors that she had no "[c]laims against third parties" and no "[o]ther contingent and unliquidated claims" of any kind. *Id*.

Had Plaintiff properly identified the claims she now asserts against Venerable as assets in the bankruptcy, those claims would have been subject to inclusion in the bankruptcy estate and thus used to satisfy her debts. *See* 11 U.S.C. § 541(a). She did not, and her debt was discharged. *In re Montoya*, No. 19-13594, Dkt. 14, Harris Decl., Ex. 5. Over a year after her debts were

REPORT AND RECOMMENDATION - 10

discharged, Plaintiff filed suit herein.

Because Plaintiff omitted her claims from the bankruptcy petition and obtained a discharge, Venerable argues that judicial estoppel bars her action. Plaintiff argues to the contrary. Plaintiff first argues that Venerable wrongfully attached her bankruptcy filings to its motion to dismiss. However, as previously noted, this Court may take judicial notice of court filings.

Plaintiff also argues that she did in fact disclose her claims against Venerable on pages 4, 6, and 9 of the bankruptcy schedule. Dkt. 39 at 6 n. 27. A careful review of Plaintiff's bankruptcy filings does not support Plaintiff's argument. Plaintiff disclosed an ownership of a "Voya IRA Account" from which "a financial advisor stole approx. $90,000." Dkt. 31-4 at 5. However, her claims in this lawsuit are not based on recouping a $90,000 loss from her financial advisor (who is not named as a defendant herein) but are against Venerable, the successor in interest to the Voya IRA Account for losses of over $120,000 from a fraudulently created and funded Venerable IRA valued at $408,858.21. In addition, Plaintiff alleges that she is entitled to recover from Venerable, "exemplary damages, double damages, treble damages, statutory damages, and all damages allowed by law" and for injuries to "her well-being, health, and emotional state as well as any and all general damages, emotional distress damages, and/or mental anguish." Dkt. 5 at 24. This claim was not disclosed in her bankruptcy schedules.

Plaintiff next argues that her claims are exempt from the bankruptcy estate (and therefore, need not have been disclosed) because they are "connected to" her retirement funds. Dkt. 39 at 7. Retirement funds and claims for retirement benefits may be exempt.

RCW 6.15.020(3) protects:

"[t]he right of a person to a pension, annuity, or retirement allowance or disability allowance, or death benefits, or any optional benefit, or any other right accrued or accruing to any citizen of the state of Washington under any employee benefit plan, and any fund created by such a plan or arrangement" from execution,

REPORT AND RECOMMENDATION - 11

attachment, garnishment, or seizure by or under any legal process.

However, even claims that are "connected to" retirement funds are non-exempt until they are found to be exempt by the bankruptcy court. *In re McClain*, 516 F.3d 301, 315 (5th Cir. 2008) (property is non-exempt until it is found to be exempt by the bankruptcy court; a debtor cannot fail to disclose claims on the ground that they are exempt then claim retroactive exemption later). More importantly, Plaintiff is not merely seeking retirement benefits from Venerable. Plaintiff is seeking damages for, among other things, "humiliation, emotional distress, loss of enjoyment of life, pain and suffering, [and] punitive damages." Dkt. 5, FAC ¶¶ 3.13, 4.15, 5.9, 6.9, and 7.8. These claims against Venerable were not listed in Plaintiff's bankruptcy schedules. Furthermore, as discussed below, any determination of whether Plaintiff's claims could qualify as exempt would have been a determination for the bankruptcy court to make during the pendency of the bankruptcy case, with notice to all creditors.

Plaintiff also argues that the bankruptcy trustee recently confirmed by email that her claims were properly disclosed and exempt from the bankruptcy estate. She also points out that the trustee declined to reopen the bankruptcy case when asked to do so by Venerable. Dkt. 39 at 7. Plaintiff relies on matters outside the pleadings to support this argument. Venerable does not dispute that the trustee declined to reopen the bankruptcy proceedings after it notified the bankruptcy trustee of the claims asserted in this lawsuit (*see* Dkt. 30 at 6 n.5) but argues that the trustee's abandonment of Plaintiff's cause of action is a nonevent.

As correctly noted by Venerable, causes of action possessed by the debtor at the time of the filing of the bankruptcy petition are part of the bankruptcy estate. *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). While a trustee can choose to abandon an asset (including legal claims), the trustee must first provide notice to the creditors and an opportunity for a hearing. 11 U.S.C. §

REPORT AND RECOMMENDATION - 12

554(a). *See also, Biesek,* 440 F.3d at 413-414 (trustee's belated "stipulation" abandoning a cause of action is "invalid for lack of notice to the creditors") (citing *Morlan v. Universal Guaranty Life Insurance Co.*, 298 F.3d 609, 617 (7th Cir.2002). Because Plaintiff did not list any legal claims against Venerable (or anyone else), there was no notice to creditors and no determination by the Bankruptcy Court as to whether those claims would be exempted. Although Plaintiff represented to the Court and her creditors that she was pursuing reimbursement of the stolen funds, she affirmatively represented to the Court and her creditors that she had no "[o]ther contingent and unliquidated claims" – either against Voya or any other party. *In re Montoya*, No. 19-13594, Dkt. 11, at 11. Thus, any suggestion of an implied claim against Venerable – *i.e.*, for exemplary damages, double damages, treble damages, statutory damages, and all damages allowed by law" or recovery for injuries to "her well-being, health, and emotional state as well as any and all general damages, emotional distress damages, and/or mental anguish" – is overborne by her express statement to the contrary. *Hamilton*, 270 F.3d at 781, 786 (9th Cir. 2001) (claims judicially estopped where debtor plaintiff indicated on bankruptcy schedule that he had no "[o]ther contingent and unliquidated claims").

Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy but fails to amend her schedules or disclosure statements to identify the cause of action as a contingent asset. *Hay*, 978 F.2d at 557 ("We recognize that all facts were not known to Desert Mountain at that time, but enough was known to require notification of the asset to the bankruptcy court."); *In re Coastal Plains*, *Inc.*, 179 F.3d 197, 208 (5th Cir. 1999); 179 F.3d at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. 859, 867 (E.D.Tex.1996)) ("[I]f the debtor has enough information ... prior to confirmation to suggest that it may have a possible cause of

REPORT AND RECOMMENDATION - 13

action, then that is a known cause of action such that it must be disclosed") (internal quotations omitted). Plaintiff knew of all the material facts surrounding the establishment and subsequent withdrawals to the IRA made fraudulently in her name in June 2018, when she was notified by the California Department of Insurance – well over a year before she filed her bankruptcy petition and schedules and yet another two years before she pursued this case. Plaintiff's knowledge that a cause of action against Venerable existed at the time she filed for bankruptcy and completed her bankruptcy schedules and disclosure statements is clearly evidenced by Plaintiff's allegations in the FAC.

The Bankruptcy Code and Rules "impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims," which duty continues for the duration of the bankruptcy proceeding. *In re Coastal Plains*, 179 F.3d at 207–208; *Hay*, 978 F.2d at 557; 11 U.S.C. § 521(1). "[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." *In re Coastal Plains*, 179 F.3d at 208. By failing to list her claims against Voya (now Venerable), Plaintiff deprived the bankruptcy court and her creditors, who relied on the schedules to determine what action, if any, they would take in the matter. As noted by the Fifth Circuit in *In re Coastal Plains*:

> The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*

REPORT AND RECOMMENDATION - 14

*Id.* (alteration in original) (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996)).

The undersigned agrees with this analysis. Accordingly, it is recommended that Venerable's motion to dismiss be granted on the ground that Plaintiff is judicially estopped from pursuing claims against Venerable. The Court has not addressed Venerable's further grounds for dismissal.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **December 27, 2021**. The Clerk should note the matter for **December 29, 2021**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed six (6) pages. The failure to timely object may affect the right to appeal.

DATED this 10th day of December, 2021.

*[signature]*
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15